

**FILED**

*8:21 am, 7/1/20*

**U.S. Magistrate Judge**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

---

WATERVATION PLLC,

                      Plaintiff,

vs.

SHAMROCK ENVIRONMENTAL
CORPORATION,

                      Defendant.

Case No: 2:20-CV-00063-MLC

---

## ORDER GRANTING DEFENDANT'S MOTION TO STAY AND DENYING PLAINTIFF'S MOTION TO REMAND

THIS MATTER comes before the Court upon Defendant Shamrock Environmental Corporation's Motion to Dismiss [Doc. 3] which, alternatively, requests the Court to stay or transfer this case ("Motion to Dismiss"), and Plaintiff WaterVation, PLLC's Motion to Remand [Doc. 13]. The Court has fully reviewed the briefings and is fully apprised of the facts and law surrounding these motions.

## I.      BACKGROUND

This case arises out of a state court action where Plaintiff WaterVation, PLLC ("WaterVation") requested the state court to declare that the First Judicial District, Laramie County, Wyoming, is the sole and exclusive venue for disputes arising from a Subcontract between WaterVation and Defendant Shamrock Environmental Corporation ("Shamrock") and find that Shamrock breached the Subcontract by bringing the parties' disputes to arbitration in North Carolina  ECF_2 at 1, 8.

In late 2017, the Wyoming Game & Fish Commission ("WGFC") solicited bids for a "design-build" stream restoration project and Shamrock allegedly approached WaterVation about working together to submit a bid to work on the WGFC project. *Id.* at 2. Shamrock submitted a bid and WGFC accepted it. *Id.* WGFC and Shamrock entered a contract ("the Prime Contract") that allowed Shamrock to engage subcontractors but required that "each subcontractor be bound by the Contract." *Id.* at 3; *id.* at 37, § 8(JJ)(iii). This requirement is key in the present dispute because the Prime Contract contains a forum selection clause. *Id.* at 4; *id.* at 38, § 9(B). The forum selection clause is written as follows:

> **B. Applicable Law, Rules of Construction, and Venue.** The construction, interpretation, and enforcement of this Contract shall be governed by the laws of the State of Wyoming, without regard to conflicts of law principles. The terms "hereof," "hereunder," "herein," and words of similar import, are intended to refer to this Contract as a whole and not to any particular provision or part. The Courts of the State of Wyoming shall have jurisdiction over this Contract and the parties. The venue shall be the First Judicial District, Laramie County, Wyoming.

*Id.* at 38, § 9(B). Additionally, the Prime Contract requires that "[i]n the event of a conflict or inconsistency between the language of this Contract and the language of any attachment or document incorporated by reference, the language of this Contract shall control." *Id.* at 4; *id.* at 40, § 9(K).

Following the formation of the Prime Contract between WGFC and Shamrock, in 2018 Shamrock and WaterVation entered into a Subcontract Agreement ("the Subcontract"). *Id.* at 4. WaterVation maintains that the Prime Contract was fully incorporated into the Subcontract. *Id.* at 4, n.1. The Subcontract provided that the subcontractor agreed

> to be bound to Shamrock by the terms of the Prime Contract insofar as it relates in any way to the Subcontractor's Work, and to assume towards Shamrock, in connection with the Subcontractor's Work, all of the obligations and responsibilities which Shamrock by its Prime Contract assumes towards the Customer, the project owner or anyone else.

*Id.* at 4–5; *id.* at 56, § 1(I).  The Subcontract specifies that the subcontractor's work must be performed "strictly in accordance with . . . [t]he Prime Contract."  *Id.* at 56, §1(E).

Importantly, the Subcontract contains an arbitration provision.  *Id.* at 68, § 31.  The provision specifies that:

> Any dispute, controversy, or claim (a "Dispute") arising out of or in connection with the Subcontract shall be referred to and determined by binding arbitration conducted in accordance with the American Arbitration Association ("AAA") arbitration rules for commercial disputes (the "rules"), which are deemed to be incorporated herein by reference, except that in the event of any conflict between the Rules and the arbitration provisions set forth below, the provisions set forth below shall govern and control.  The arbitration hearing shall be held in Greensboro, North Carolina, unless a different location is specified in writing by Shamrock.

*Id.*[1]  The Subcontract further notes that:

> Shamrock may, in its sole discretion, elect to waive arbitration by written notice to Subcontractor and, in the event Shamrock waives arbitration, any claim or dispute shall be determined by a court of competent jurisdiction.  For purposes of any lawsuit, Subcontractor consents to the personal jurisdiction of the state and federal courts located in Guilford County, North Carolina for adjudication of any claim or dispute involving Shamrock or which is related to or arising from this Subcontract.

*Id.* at 69, § 31(C).  Additionally, the Subcontract provides that "the rights and obligations arising under this subcontract shall be governed and construed in accordance with the laws of North Carolina or if such designation if [sic] unenforceable, then by the laws of the state

---

[1] There are other details regarding arbitration laid out in the arbitration clause of the Subcontract, but the above-quoted language is the relevant language for this dispute.

where the subcontractor's work is to be performed, without giving effect to choice of law principles." *Id.* at 68, § 30.

Pursuant to the arbitration clause in the Subcontract, Shamrock submitted a Demand for Arbitration on October 14, 2019, with AAA in Greensboro, North Carolina ("the North Carolina Arbitration"). *Id.* at 5. Shamrock paid a filing fee on December 30, 2019, and AAA opened the North Carolina Arbitration. *Id.* In the Demand, Shamrock alleged that WaterVation committed professional negligence, breached common law and fiduciary duties, tortuously interfered with the Prime Contract, and breached the Subcontract. *Id.* at 6. Shamrock further raised claims for indemnification and breach of the implied covenant of good faith and fair dealing. *Id.* The North Carolina Arbitration is still pending. *Id.* The date for an arbitration hearing has been discussed and could occur in September 2020. *Id.* WaterVation has preserved its objection to venue in the North Carolina Arbitration and has paid no fees to AAA for administration of the North Carolina Arbitration. *Id.*

WaterVation filed the present declaratory judgment action in state court, maintaining that the Prime Contract is fully incorporated into the Subcontract, which raises questions concerning the construction and validity of the forum selection clauses. *Id.* at 6–7. In its complaint, WaterVation maintains that the Prime Contract and Subcontract have irreconcilable forum selection provisions and that the Prime Contract "shall control" where there is inconsistency, according to the Prime Contract. *Id.* at 7. WaterVation further argues that the Subcontract does not contain any language limiting the application of the forum selection clause in the Prime Contract. *Id.* Therefore, WaterVation seeks a declaration that the Subcontract evinces intent for the Prime Contract to control with

respect to the forum selection clause and, thus, disputes under the Subcontract must be brought in Wyoming. *Id.* Further, WaterVation seeks a declaration that the two forum selection clauses have irreconcilable differences and that ambiguity should be construed against Shamrock, as the drafter of the Subcontract. *Id.* Alternatively, WaterVation seeks a declaration that there is no mutual assent supporting any purported agreement, the two forum selection clauses are irreconcilable, and the Subcontract does not constitute an offer capable of acceptance in terms of the forum selection clause. *Id.* at 8.

In light of its declaratory judgment action, WaterVation maintains that bringing the North Carolina Arbitration constitutes a breach of the Subcontract, and the breach is the direct and proximate cause of damages to WaterVation. *Id.* In sum, WaterVation essentially requests a declaration that the North Carolina Arbitration is not the appropriate forum, Shamrock breached the Subcontract in bringing the North Carolina Arbitration, and WaterVation is entitled to money damages for breach of the contract.

Subsequent to WaterVation filing its declaratory judgment action in state court, on April 9, 2020 Shamrock removed the action to the U.S. District Court for the District of Wyoming. ECF_1; ECF_6. WaterVation does not dispute that diversity jurisdiction exists under 28 U.S.C. § 1332(a), as the parties are completely diverse and the amount in controversy exceeds $75,000. ECF_14 at 5–6; ECF_1 at 2.

Almost simultaneous with its removal action, Shamrock filed its Motion to Dismiss, requesting the Court to dismiss the action for *forum non conveniens* or, alternatively, to stay or transfer the action to the Middle District of North Carolina. ECF_3 at 1. Shamrock argues that the Subcontract must control. ECF_4 at 6–7, 11–12. According to Shamrock,

the Prime Contract's forum selection clause only applies to its parties, which is a defined term that does not include WaterVation. *Id.* at 4–5, 8. Moreover, Shamrock argues the Prime Contract was only incorporated into the Subcontract as to WaterVation's work, not as to the forum selection clause. *Id.* at 4, 9–10. Because Shamrock maintains that the Subcontract contains a valid forum selection clause, in the form of an arbitration agreement, it argues that the proper method of addressing the clause is to dismiss the action under the doctrine of *forum non conveniens*. *Id.* at 12–14. Alternatively, Shamrock argues that the Court must stay litigation until arbitration is complete because the parties agreed to arbitrate and agreed to delegate arbitrability questions to the arbitrator. *Id.* at 14–15. The last option is to transfer the case to the Middle District of North Carolina, which is the only court with authority to compel arbitration pursuant to the AAA rules. *Id.* at 15.

Prior to responding to Shamrock's Motion to Dismiss, WaterVation filed a Motion to Remand on April 20, 2020. ECF_13. The Motion to Remand argues that the Wyoming First Judicial District Court is the only court with jurisdiction over "all disputes related to the Prime Contract," and Shamrock agreed to this stipulation when it signed the Prime Contract. ECF_14 at 2, 6. WaterVation argues that the Prime Contract contains a mandatory forum selection clause that the Court must enforce. *Id.* at 6–8. According to WaterVation, the declaratory judgment action can only be resolved by interpreting the Prime Contract and the Court has no jurisdiction to interpret the Prime Contract due to its forum selection clause. *Id.* at 8. Thus, WaterVation maintains that the action must be remanded.

On the same day as filing its Motion to Remand, WaterVation filed a Motion for Stay of Time Period to Respond to Defendant's Motion to Dismiss or, Alternatively, for Extension of Time to Respond to Same ("Motion for Extension of Time").  ECF_15.  What was portrayed as a simple motion for extension of time morphed into what the Court deems "litigation on litigation"—a dispute over the order that the Motion to Dismiss and Motion to Remand should be considered.  *See* ECF_19 (explaining Defendant's opposition to the Court granting Plaintiff a deadline extension in a Motion for Reconsideration).  The Court heard oral arguments on the matter and, for reasons set forth in greater detail below, concluded that it is most appropriate for these two motions to be considered concurrently. Any additional facts and relevant arguments from the parties are also set forth below.

## II.    STANDARD OF REVIEW

The parties have already disputed in previous briefings that both the Motion to Dismiss and the Motion to Remand are gateway issues.  The Court first notes that it is appropriate to consider the motions in either order.  Arbitration agreements are treated as forum selection clauses, forum selection clauses are treated under the doctrine of *forum non conveniens*, and *forum non conveniens* is considered a threshold issue.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (explaining that arbitrability is a "gateway" and "threshold" issue); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) (explaining that an agreement to arbitrate is "a specialized kind of forum-selection clause"); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) (noting that a district court "need not take up first any other threshold objection" when a defendant raises *forum non conveniens*).  Likewise, a motion to remand for lack of

jurisdiction is also a threshold matter.  *See Sinochem Int'l Co.*, 549 U.S. at 425.  Though the Tenth Circuit has, in the past, ruled that "the better practice would have been to rule first on the motion to remand and if granted to have sent the motion to dismiss back to the state court" such rulings are based on the lack of appealability when motions to remand are founded on lack of subject matter jurisdiction or some other procedural removal defect. *See, e.g.*, *In re Bear River Drainage Dist.*, 267 F.2d 849, 851 (10th Cir. 1959).  Therefore, "the better practice" is inapplicable here because this motion to remand is appealable.  *See id.*  Ultimately, when confronted with both a motion to remand and a motion to dismiss for *forum non conveniens*, the Court has considerable discretion in determining which threshold issue should be addressed first.  *Sinochem Int'l Co*, 549 U.S. at 431.

Notably, Shamrock's supplement to its Motion for Reconsideration argued that the Court should address its Motion to Dismiss first because at least three other circuits have concluded a motion under the Federal Arbitration Act ("FAA") should be addressed prior to a motion to remand.  *See Southard v. Newcomb Oil Co.*, No. 19-5187, 2019 WL 8111958, at *4–5 (6th Cir. Nov. 12, 2019) (citing decisions from the Ninth Circuit, Third Circuit, and Eastern District of Michigan); ECF_23 at 2–4.  While this Court is not bound by these decisions or any similar authority in the Tenth Circuit, the cases support that ruling on Shamrock's alternative Motion to Stay prior to WaterVation's Motion to Remand is also appropriate, since the Motion to Stay falls under the FAA.  Because of the Court's broad discretion in managing its docket, it is appropriate to consider these motions in either order or concurrently.  The Court concludes that the parties' arguments are so intertwined,

and intersect so frequently, that concurrent consideration is the most logical method to proceed.

### A. Defendant's Motion to Dismiss or Transfer

The Federal Rules of Civil Procedure set forth several methods for a defendant to present defenses by motion, but none of those methods include a Motion to Dismiss for *forum non conveniens*.  *See generally* Fed. R. Civ. P. Rule 12(b).  Nevertheless, Congress has provided a means for district courts to dismiss or transfer civil actions filed in the wrong district.  28 U.S.C. § 1406(a) (2018).  Congress also provides for courts to transfer civil actions to a more convenient district upon motion of a party, which is a codification of the doctrine of *forum non conveniens*.  28 U.S.C. § 1404(a)–(b); *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Tex.*, 571 U.S. 49, 60 (2013).  As already noted, an agreement to arbitrate is a type of forum selection clause that is enforced through the doctrine of *forum non conveniens*.  *Scherk*, 417 U.S. at 519; *Atl. Marine Const. Co.*, 571 U.S. at 60.  28 U.S.C. § 1404 only applies to cases where the transferee forum should be another federal court.  *Atl. Marine Const. Co.*, 571 U.S. at 60.  Where the transferee is a nonfederal forum, the common law doctrine of *forum non conveniens* applies, but it is evaluated by the same means as the codified version of the doctrine.  *Id.*

Nevertheless, a court's evaluation of a motion to dismiss or transfer under the doctrine of *forum non conveniens* where there is a valid forum selection clause is slightly different than a typical case not involving a forum selection clause.  *Id.* at 63.  There are three alterations to a court's *forum non conveniens* analysis where a forum selection clause is at issue.  *Id.*  "First, the plaintiff's choice of forum merits no weight."  *Id.*  Instead, "the

plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, while the court would typically weigh public and private interest factors, a court "should not consider arguments about the parties' private interests." *Id.* at 64. Thus, the forum selection clause will control in all but unusual cases, as public interest factors rarely defeat a motion under the doctrine of *forum non conveniens*.[2] *See id.* Third, the original venue's choice-of-law rules will not apply. *Id.* In sum, the threshold question is whether there is a *valid* forum selection clause and, if there is such a clause, it "[should be] given controlling weight in all but the most exceptional cases." *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)) (alterations in original). Under this analysis, if the arbitration clause is valid, it is appropriate to dismiss or transfer the case.

## B. Defendant's Motion to Stay

In addition to the option of addressing the arbitration clause under the doctrine of *forum non conveniens*, the FAA allows parties to an arbitration agreement to file a motion to stay a case until arbitration is held. 9 U.S.C. § 3. In fact, the FAA mandates that:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]

---

[2] "Public interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n.6 (1981)) (alterations in original). WaterVation bears the burden of proving these factors outweigh the arbitration clause, if it is deemed valid, but WaterVation has made no effort to meet such a burden. Therefore, if the Court finds that the arbitration clause is valid, then dismissal or transfer is appropriate under the doctrine of *forum non conveniens*.

*Id.*  The Supreme Court has concluded that "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein, Inc.*, 139 S. Ct. at 530.  Instead, where a motion is filed under Section 3 of the FAA and arbitrability is delegated to the arbitrator, "the court must stay litigation in favor of arbitration." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1288 (10th Cir. 2017).  In support of Congress's clear policy to favor arbitration agreements, as evidenced in the FAA, "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" even if the issue "is the construction of the contract language itself." *BOSC, Inc. v. Bd. of Cty. Commissioners of Cty. of Bernalillo*, 853 F.3d 1165, 1170 (10th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (discussing Congress's policy preference to favor arbitration agreements).

Thus, as to Defendant's alternative motion to stay, this Court must determine (1) whether the arbitration agreement is valid and (2) whether the parties delegated arbitrability to the arbitrator.  Although a valid arbitration agreement makes it appropriate to dismiss or transfer this case under the doctrine of *forum non conveniens*, the more specific language of the FAA makes it appear that—if the parties delegated the question of arbitrability to the arbitrator—it is *most* appropriate to stay the case.  Therefore, the Court's analysis of Defendant's Motion will look at the two questions required under 9 U.S.C. § 3 to determine whether it should stay this case.

### C.  Plaintiff's Motion to Remand

When a case is removed from state court, a plaintiff may file a motion to remand for "any defect other than lack of subject matter jurisdiction" within thirty days of the notice of removal.  28 U.S.C. § 1447(c).  Courts should strictly construe removal statutes and doubts should be resolved in favor of remand.  *Fajen v. Found. Res. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).  Addressing the Court's jurisdiction upon removal is often a threshold issue.  *In re Bear River Drainage Dist.*, 267 F.2d at 851.  But "[w]hen a district court remands because the defendant waived removal in a forum-selection clause, it makes a decision based on the substantive merits."  *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1094 (10th Cir. 2017); *SBKC Serv. Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 580–81 (10th Cir. 1997).  Consequently, ruling on the "jurisdictional" argument in WaterVation's motion to remand first would result in a substantive decision because the argument is based on waiver of the right to remove in a forum selection clause.[3]

### D.  Conflicts of Law Principles

The Court must also address conflicts of law principles.  Agreements to arbitrate are a matter of contract between parties and require courts to "apply ordinary state-law principles governing the formation of contracts to determine whether the parties have

---

[3] WaterVation attempts to distinguish the Tenth Circuit caselaw establishing that remands due to a forum selection clause are a substantive decision on the merits.  *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089, 1095 (10th Cir. 2017); *SBKC Service Corp. v. 1111 Prospect Partners, L.P.*, 105 F.3d 578, 580–81 (10th Cir. 1997); ECF–31 at 12.  WaterVation contends that such findings really pertain to the appealability of remands based on forum selection clauses.  ECF_31 at 12.  Indeed, the cases discussing the substantive nature of remands based on forum selection clauses explain that determining whether a party waived the right to remove through a forum selection clause requires contract construction, which means orders on such motions to remand are appealable.  *See SBKC*, 864 F.3d at 580–81; *Harvey v. UTE Indian Tribe of the Uintah and Ouray Reservation*, 797 F.3d 800, 804 (10th Cir. 2015) (explaining that review on appeal is only precluded for lack of subject matter jurisdiction and defects in removal procedure).  While the reasoning in these cases may have been based on the reviewability of the remand, it was included in decisions that pertain to orders on motions to remand based on forum selection clauses.  Thus, the purpose for the reasoning does not contravene the Tenth Circuit's findings that such decisions are substantive decisions on the merits.

agreed to arbitrate a given dispute." *Campbell Invs., LLC v. Dickey's Barbecue Rests., Inc.*, 784 F. App'x 627, 631 (10th Cir. 2019) (quoting *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013)); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995). Wyoming conflicts of law rules require courts to apply "the law of the state chosen by the parties to govern their contractual rights and duties." *Larson v. Larson*, No. 15-CV-150-NDF, 2016 WL 9045969, at *3 (D. Wyo. May 13, 2016). Here, the parties dispute whether they chose North Carolina or Wyoming law to govern this case, pursuant to either the Subcontract's arbitration agreement or the Prime Contract's forum selection clause. Therefore, when contract principles are required in this Order, the Court applies both North Carolina and Wyoming law to ensure it makes no decision about which choice of law provision prevails.

### III.    DISCUSSION

The parties have placed before this Court an issue highlighting the dichotomy between parties clearly and unmistakably delegating arbitrability to an arbitrator and parties clearly and unequivocally waiving the right to removal. Because of the mandatory language in Section 3 of the FAA, requiring courts to stay litigation where a valid arbitration agreement delegates arbitrability to the arbitrator, the Court begins its analysis by considering this issue.

### A. Whether the Arbitration Agreement is Valid

The first question is if the Subcontract's arbitration clause ("the Arbitration Agreement") is valid. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of

any contract." 9 U.S.C. § 2. The principles governing contract formation apply to the validity of arbitration agreements as well. *Kindred Healthcare Operating, Inc. v. Boyd*, 403 P.3d 1014, 1018 (Wyo. 2017); *King v. Bryant*, 737 S.E.2d 802, 807 (N.C. Ct. App. 2013). To form a contract there must be an offer, acceptance, and consideration. *Parkhurst v. Boykin*, 94 P.3d 450, 459 (Wyo. 2004); *Lewis v. Lester*, 760 S.E.2d 91, 92–93 (N.C. Ct. App. 2014). The elements of offer and acceptance are met here as the parties negotiated and signed the Subcontract, which contained the Arbitration Agreement. ECF_1-1 at 69 (evidencing both parties' signatures in the Subcontract); ECF_4-1 (showing the alterations WaterVation made to the contract prior to signing it). Mutual promises to arbitrate constitute consideration and, here, there are mutual promises based on the signatures of the parties. *See Kindred Healthcare Operating, Inc.*, 403 P.3d at 1025; *King*, 737 S.E.2d at 807. Further, there is clear evidence that the parties performed under the Subcontract, as this controversy would not exist had they not done so. *See* ECF_2 at 6 (summarizing Shamrock's allegations that WaterVation "committed professional negligence, breached common law and fiduciary duties, tortuously interfered with the Prime Contract, and breached the Subcontract"). The requirements for a contract are clearly met, establishing an agreement to arbitrate.

WaterVation makes no clear attempt in its briefings on these motions to dispute the validity of the Arbitration Agreement. *See* ECF_31 at 15–22; ECF_14. In its complaint, WaterVation alleges that the Prime Contract controls with respect to forum selection, the irreconcilable forum selection provisions make the contract ambiguous, or there is no mutual assent due to the conflicting forum selection provisions. ECF_2 at 7–8. However,

these arguments do not undermine the clear language providing for arbitration in the Subcontract—an agreement which has met the basic elements of a contract and is the agreement between the parties in this dispute.  At the most basic level, the Arbitration Agreement is a valid contract, which requires the Court to next consider whether arbitrability was delegated to the arbitrator.

### B.  Whether the Parties Delegated Arbitrability to the Arbitrator

Next, the Court must consider whether the parties delegated arbitrability to the arbitrator.  Parties may agree to arbitrate "gateway issues" such as arbitrability.  *Rent-A-Center, W. Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).  The Tenth Circuit has noted that "all of our sister circuits . . . have unanimously concluded that incorporation of the . . . AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."  *Belnap*, 844 F.3d at 1283; *see also Rickenbaugh v. Power Home Solar, LLC*, No. 19 CVS 244, 2019 WL 7018974, at *4 (N.C. Sup. Ct. Dec. 20, 2019).  While the court in *Belnap* did not expressly hold similarly, that is because such a finding was inapplicable to the case.  *Belnap*, 844 F.3d at 1284 (discussing the incorporation of JAMS rules rather than AAA rules).  Nevertheless, the Tenth Circuit evidently endorsed such a ruling, by distinguishing the one Tenth Circuit case that might be read as deviating from such a finding.  *Id.*

The reason incorporation of the AAA rules into an arbitration agreement is seen as clear and unmistakable evidence of delegating arbitrability to the arbitrator is that Rule 7(a) states "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement

15

or to the arbitrability of any claim or counterclaim." ECF_4-4 at 13. This language distinctly delegates the issue of arbitrability to the arbitrator. Therefore, this Court agrees with the other courts which have found that full incorporation of the AAA rules into an arbitration agreement constitutes clear and unmistakable evidence of agreement to delegate questions of arbitrability to the arbitrator.

Here, the AAA rules were fully incorporated into the valid arbitration agreement. The agreement specified that disputes, controversies, or claims arising out of the Subcontract

> shall be referred to and determined by binding arbitration conducted in accordance with the American Arbitration Association ("AAA") arbitration rules for commercial disputes (the "rules"), *which are deemed to be incorporated herein by reference*, except that in the event of any conflict between the Rules and the arbitration provisions set forth below, the provisions set forth below shall govern and control.

ECF_2 at 68, § 31(A) (emphasis added). Here again, WaterVation does not challenge the validity of this provision within the Subcontract, nor does it challenge that incorporation of the AAA rules into a contract can constitute clear and unmistakable evidence of an agreement to delegate the issue of arbitrability to the arbitrator. For these reasons, the Court concludes that the arbitration agreement is valid, arbitrability was clearly and unequivocally delegated to the arbitrator. Therefore, Section 3 of the FAA requires this Court to stay the case until the issue of arbitrability is decided.[4]

---

[4] As to WaterVation's argument that a decision to dismiss, transfer, or stay would violate the United States Constitution, such an argument hardly bears recognition. The United States Constitution prevents *states* from passing legislation impairing contracts between two parties. U.S. CONST. ART. I, § 10, cl. 1. Dismissal, transfer, or stay under any of the federal statutes at issue would not violate the Contracts Clause, as it is aimed at preventing contract impairment by *state* legislation. *Barrows v. Jackson*, 346 U.S. 249, 260 (1953); *Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018). WaterVation can hardly argue that its right to contract is being impaired by the Court's determination as to how to proceed in managing a case where WaterVation is seeking to enforce a forum selection clause in a contract to

## C.  Whether Defendant Waived the Right to Remove

Having concluded the Court should stay proceedings in this case pursuant to Section 3 of the FAA, the Court must still address WaterVation's Motion to Remand to the extent that it is appropriate for the Court to maintain jurisdiction over the case.  WaterVation argues Shamrock waived its right to remove to federal court in the Prime Contract.  ECF_31 at 10.  Parties may waive their right to remove to federal court in some instances, such as when they enter into a contract with a mandatory forum selection clause.  *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926–27 (10th Cir. 2005).  There exist either permissive or mandatory forum selection clauses.  *Id.*  Mandatory clauses "contain clear language showing that jurisdiction is appropriate only in the designated forum" while permissive clauses "authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere."  *Id.*  Mandatory forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).  While a mandatory forum selection clause can result in waiver of the right to remove, the waiver must be "clear and unequivocal."  *Am. Soda, LLP*, 428 F.3d at 921; *see also Milk 'N' More, Inc.*, 963 F.2d at 1346 (quoting *Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990)) (emphasizing that waiver of the right to remove must be "clear and unequivocal").  Thus, the Court must address WaterVation's argument

---

which WaterVation is not a party, the substance of which may or may not have been incorporated into the Subcontract to which WaterVation actually is a party.

regarding waiver of the right to remove insofar as explaining why the Prime Contract's forum selection clause need not be enforced at this time.

Shamrock does not dispute the mandatory nature of the forum selection clause in the Prime Contract, it does dispute any clear and unequivocal waiver of its right to remove. *See* ECF_27 at 7.  Shamrock maintains the Prime Contract's forum selection clause does not apply to the dispute since (1) WaterVation is not a party to the Prime Contract, as defined by the contract and (2) the Prime Contract was not fully incorporated into the Subcontract to which WaterVation is a party.  The Court turns to principles of contract interpretation to verify why Shamrock has not clearly and unequivocally waived its right to remove.  However, the Court expressly limits the following analysis to supporting its finding that there is no clear and unequivocal waiver of the right to remove and, thus, no present requirement to remand the case.  This analysis is not intended to be a final construction of the contract language set forth in the Prime Contract or Subcontract nor is it intended as a final determination of the issue of arbitrability based on which forum selection clause should prevail.

As to whether there was a clear and unequivocal waiver of the right to remove a case relating to the Subcontract, based on a forum selection clause in the Prime Contract to which WaterVation is not a party, the Court should look to the meaning the contract language conveys to a reasonable person, including the language of definitions included in a contract.  *See Energy Drilling, LLC v. Rancher's Expl. Partners, LLC*, No. 13-CV-103-F, 2013 WL 11400864, at *2 (D. Wyo. Sept. 9, 2013); *Singleton v. Haywood Elect. Membership Corp.*, 588 S.E.2d 871, 875 (2003); *see also Eugene Water & Elec. Bd. v.*

*MWH Americas, Inc.*, 426 P.3d 142, 151–52 (Or. Ct. App. 2018) (explaining that "the parties" was "an unambiguous reference to the parties to the prime contract itself" and the dispute resolution clause at issue did not apply to the subcontractors because there was no evidence that it was intended to do so).  The Prime Contract's forum selection clause specifies that "[t]he Courts of the State of Wyoming shall have jurisdiction over this Contract and *the parties*.  The venue shall be the First Judicial District, Laramie County, Wyoming."  ECF_2 at 38, § 9(B) (emphasis added).  The Prime Contract defines the term "parties" by explaining that the Prime Contract is "made and entered into by and between the Wyoming Game and Fish Commission . . . and Shamrock Environmental Corporation." *Id.* at 11, § 1.  There is no mention of WaterVation in the definition of "parties."  Therefore, the Court cannot conclude that Shamrock clearly and unequivocally waived its right to remove under the Prime Contract because there is no clear and unequivocal evidence that Shamrock intended the Prime Contract's forum selection clause to apply to WaterVation.

This discussion directly ties together with WaterVation's argument that the Prime Contract requires subcontractors to be bound by the Prime Contract and that the parties are bound to the Prime Contract's forum selection clause because it was incorporated by reference.  Indeed, a contract can be enforced by a non-party if that contract was incorporated into a contract between the plaintiff and defendant. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009).  Under Wyoming law though, a document is only incorporated "to the extent indicated and for the specific purpose indicated." *Fleig v. In re Fleig*, 413 P.3d 638, 641–42 (Wyo. 2018) (quoting *Halling v. Yovanovich*, 391 P.3d 611, 618 (Wyo. 2017)).  In North Carolina, incorporation by reference declares that the

document is incorporated "as much as if it were set out at length therein." *Shenkel & Shultz, Inc. v. Hermon F. Fox & Assocs., P.C.*, 658 S.E.2d 918, 921–22 (N.C. 2008).  At first the North Carolina rule may appear slightly more lenient than Wyoming law.  However, when read in conjunction with North Carolina's principle that "if the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract," the Court should not blindly conclude that a document is fully incorporated if the plain language does not indicate full incorporation of that document.  *See Outdoor Lighting Perspectives Franchising, Inc. v. Harders*, 747 S.E.2d 256, 267 (N.C. Ct. App. 2013).

Here, the Prime Contract specified that Shamrock "shall require each subcontractor to be bound by the Contract."  ECF_2 at 37, § 9JJ(iii).  But the Subcontract binds WaterVation to Shamrock "by the terms of the Prime Contract" only "insofar as it relates in any part or in any way to the Subcontractor's Work, and to assume toward Shamrock, in connection with the Subcontractor's Work, all of the obligations and responsibilities which Shamrock by its Prime Contract assumes towards the Customer, the project owner or anyone else." *Id.* at 56, § 1(I).  Regardless of whether the parties had a subjective intent to adhere to the Prime Contract's requirement that subcontractors be bound by its terms, the plain language of the Subcontract indicates that the Prime Contract was incorporated only as to WaterVation's work.  Further, despite WaterVation's argument to the contrary, this declaratory judgment action solely regards the proper forum for the parties' dispute, *not* WaterVation's work.  To this extent, there is no clear and unequivocal waiver of the right to remove.

Since the Court concludes the forum selection clause in the Prime Contract was not clearly and unequivocally incorporated into the Subcontract, any other means for WaterVation to argue clear and unequivocal waiver of the right to remove are limited. Nonparties may seek to enforce a contract through "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP*, 556 U.S. at 631 (quoting 21 R. LORD, WILLISTON ON CONTRACTS § 57:19 (4th ed. 2001)). It is not uncommon for nonparties to a contract to argue third-party beneficiary status as a means of enforcing the contract. *See, e.g.*, *Cordero Mining Co. v. U.S. Fidelity & Guar. Ins. Co.*, 67 P.3d 616, 619 (Wyo. 2003); *Lowrimore v. Severn Trent Envtl. Servs., Inc.*, No. CIV-15-475-RAW, 2016 WL 799127, at *3 (E.D. Okla. Feb. 29, 2016) (explaining that a non-signatory seeking to enforce a forum selection clause could not do so unless the third party was a beneficiary of the contract). However, WaterVation makes no attempt to argue that it is a third-party beneficiary, ECF_28 at 3, nor does the Court see any reason to conclude it is one. There appears no other remote basis for the Court to find clear and unequivocal waiver of the right to remove where WaterVation is a third party to the Prime Contract and the Prime Contract was not clearly and unequivocally incorporated into the Subcontract. Shamrock cites numerous persuasive cases showing that courts tend not to enforce forum selection clauses where the plaintiff and defendant are not both parties to the contract. *See* ECF_27 at 9 (citing eight cases where courts refused to grant a motion to remand because plaintiffs and defendants were not both parties to the contract with the forum selection clause). While WaterVation meticulously distinguishes these cases from the present one, ECF_28 at 3–7, the Court

finds these distinctions do not impact its analysis in that other courts are careful not to allow a non-party to enforce a forum selection clause where there is no basis to do so. Without clear and unequivocal incorporation of the Prime Contract into the Subcontract, the Court can find no other reason to conclude Shamrock clearly and unequivocally waived the right to remove.

Having only ruled on whether Defendant clearly and unequivocally waived its right to remove, there can be no argument that this Order prejudices WaterVation through the doctrine of issue preclusion.  ECF_31 at 14.  The doctrine of issue preclusion only applies if there has been a final adjudication on the merits.  *Renken v. Builders Transp. Co.*, No. 10-CV-057-J, 2010 WL 11450502, at *3 (D. Wyo. Aug. 23, 2010); *SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co.*, 820 F. Supp. 2d 677, 687 n.10 (M.D.N.C. 2011) (explaining that issue preclusion requires the issue to actually be determined).   In the present motions, it is important not to confuse "the question of who decides arbitrability with the separate question of who prevails on arbitrability."  *Henry Schein, Inc.*, 139 S. Ct. at 531.  Here, the Court has simply adjudicated that there was no clear and unequivocal waiver of the right to remove and that the parties delegated arbitrability to the arbitrator in a valid Arbitration Agreement.  Beyond that, the Court does not purport to conclude which forum selection clause controls and instead leaves that issue to the arbitrator as mandated by the Supreme Court and the FAA.[5]

## IV.   CONCLUSION

---

[5] Because Plaintiff's Motion to Remand is denied, the Court does not address Plaintiff's request for costs and attorneys' fees.  ECF_13 at 4–5.

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss which, alternatively, requested the Court to stay or transfer this case is GRANTED AS TO THE MOTION TO STAY.

IT IS ALSO ORDERED that Plaintiff's Motion to Remand is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that this action shall be stayed pursuant to 9 U.S.C. § 3 until an arbitrator has determined whether the dispute is arbitrable.

Dated this 30th day of June, 2020.

MARK L. CARMAN
UNITED STATES MAGISTRATE JUDGE